# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In the Matter of David Wilford Cook & Martha Ann Cook, Debtors. | § § § | |
| CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC. Plaintiff-Appellant, | § § § § § | |
| v. | § § | CIVIL ACTION NO. H-05-0879 |
| DAVID WILFORD COOK & MARTHA ANN COOK, Defendants-Appellees. | § § § § § | Appeal from Adversary Cause No. 04-3022 in Bankruptcy Cause No. 03-46667-H2, United States Bankruptcy Court for the Southern District of Texas |

## MEMORANDUM AND OPINION

Consolidated Electrical Distributors, Inc. ("CED") appeals from the bankruptcy court's final judgment in favor of the debtors, David Wilford Cook and Martha Ann Cook, in an adversary proceeding. The Cooks, the sole owners of Madi Electrical Services, Inc., filed for bankruptcy protection under Chapter 7 of the Code. CED filed an adversary claim alleging that the Cooks are personally responsible for money Madi Electrical Services, Inc. owed CED for electrical materials purchased for use in four construction projects. CED alleged that the Cooks violated the Texas Construction Fraud statute, TEX. PROP. CODE ANN.§ 162.001 *et seq.*, by failing to pay CED after the general contractor paid Madi and instead misappropriating the funds for personal purposes. CED alleged that this violation made the debt nondischargeable under Sections 523 and 727 of the Bankruptcy Code.

The bankruptcy court granted the Cook's motion for summary judgment and denied CED's motions for discovery and a continuance. CED appealed, arguing that the bankruptcy court erred by granting summary judgment despite allegations and competent summary judgment evidence showing that the Cooks violated fiduciary duties owing under the Texas law, and that the bankruptcy court abused its discretion in refusing to permit additional discovery.

After reviewing the record, the briefs, and the applicable law, this court concludes that the grant of summary judgment is not supported by the applicable law.  The bankruptcy court's order is reversed and this case is remanded, for the reasons set out in detail below.

**I.     Background**

The Cooks filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on November 25, 2003.  CED filed this adversary proceeding in January 2004. CED alleged that it sold electrical materials on credit to Madi, an electrical subcontractor, for use in four specific construction projects.  CED alleged that the Cooks owned and operated Madi.  CED alleged that the general contractors made payments to Madi for the electrical subcontracting work it performed, but the Cooks did not pay CED for the electrical materials and instead diverted the funds for personal use.  CED alleged that by spending construction trust funds — as to which CED was a beneficiary — for actual expenses not directly related to the work on those four construction projects, the Cooks are liable for the amount owed and the debt is nondischargeable.  CED claims that it is owed $28,431.46 and that the Cooks are not entitled to a discharge of this debt under Sections 523 and 727 of the Bankruptcy Code

because they misappropriated the funds while acting in their fiduciary capacity as trustee for CED on the four construction projects.

CED provided summary judgment evidence that it contracted with the Cooks through Madi Electrical Services, Inc., a limited liability corporation that they owned.[1]  Madi, an electrical subcontractor, agreed to pay for certain electrical supplies obtained from CED for four construction projects: (1) Ashley Every Project, located at Memorial City Mall in Houston, Texas; (2) Starbuck's Coffee Store No. 6962 Project, located in Humble, Texas; (3) another Starbuck's Coffee Store Project located in Fort Bend County, Texas; and (4) Starbuck's Coffee Store No. 2834, located in Houston, Texas.  The general contractors on each of these projects paid Madi for its work.  (Docket Entry No. 1, Tab 31, Ex. A at 7). CED provided the supplies and invoiced Madi, but never received payment.  CED submitted competent summary judgment evidence that the Cooks signed checks on Madi's accounts to pay student loan debts, their home mortgage, doctor bills, traffic citation fines to the City of Houston, country club fees, department store bills, satellite television bills, life insurance premiums, and other expenses unrelated to Madi's work on the construction projects.  CED asserted in motions for additional discovery that it had been delayed in obtaining the bank records for the critical period, from July to October 2003, and needed to depose the Cooks after obtaining those records.

---

[1] At no point did the Cooks contest the fact that they solely owned Madi.  They also testified to this fact in the bankruptcy court.  (Docket Entry No. 1, Tab 31, Ex. A at 3).

The Cooks moved for summary judgment on the grounds that Madi, and not the Cooks, did business with CED, and there was no evidence of intentional fraud. The bankruptcy court denied the discovery motions as untimely and granted the summary judgment motion. The bankruptcy court found that CED produced no evidence to support its claims that the Cooks diverted funds held in trust for CED because Madi, not the Cooks, controlled the funds in question. CED timely appealed.

## II.     The Governing Legal Standards

This court reviews the bankruptcy court's summary judgment decision *de novo*, applying the same standard as that court. *In re Mirant Corp.*, 331 B.R. 693, 696 (N.D. Tex. 2005) (citing *In re Carney*, 258 F.3d 415, 418 (5th Cir. 2001); *In re Mercer*, 246 F.3d 391, 402 (5th Cir. 2001)); BANK. R. 7056 (FED. R. CIV. P. 56 applies to adversary proceedings). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate the evidence in the record insufficiently supports an essential

element or claim.  *Celotex*, 477 U.S. at 330.  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case.  *Bourdeaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005).  "An issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir.2003) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response.  *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 305 (5th Cir. 2004).  The nonmovant must do more than show that there is some metaphysical doubt as to the material facts. *Armstrong v. Am. Home Shield Corp.,* 333 F.3d 566, 568 (5th Cir. 2003)*.*  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002); *Anderson*, 477 U.S. at 255.  "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

5

that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 322).

Discovery rulings are reviewed under a deferential abuse of discretion standard. *See Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 347 (5th Cir. 2004); *Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 397 (5th Cir. 2000).

## III.    Analysis

Section 523(a)(4) of the Bankruptcy Code bars the discharge of debts incurred through "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4) (2000). The Section 523(a)(4) exception applies to "debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition of use of property that is not the debtor's." *In the Matter of Tran*, 151 F.3d 339, 342 (5th Cir. 1998) (quoting *Boyle v. Abilene Lumber, Inc. (In re Boyle)*, 819 F.2d 583, 587–88 (1987) (footnote omitted)). Because exceptions to discharge must be narrowly construed, the definition of "fiduciary" in Section 523(a)(4) is narrower than the common-law definition. *Id.* (citing *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1339 (5th Cir. 1980)). Whether a state statute creates the type of fiduciary relationship required under Section 523(a)(4) is a question of federal law. *Id.* at 343 (citing *In re Angelle*, 610 F.2d at 1341). That question in turn rests on whether the fiduciary relationship purportedly created by state law "possesses the attributes required under § 523(a)(4)." *Id.*

The Texas Construction Fraud Statute begins with the following broad proposition:

6

> A trustee who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the trust funds.

TEX. PROP. CODE. ANN. § 162.031(a). The statute defines a "trustee" as "[a] contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds." *Id.* at § 162.002. The statute defines the following class of beneficiaries: "An artisan, laborer, mechanic, contractor, subcontractor, or materialman who labors or who furnishes labor or material for the construction or repair of an improvement on specific real property in this state." *Id.* at § 162.003. The statute does not impose a strict trust obligation on the trustee. Among the affirmative defenses available to trustees under the act is that the challenged funds "were used by the trustee to pay the trustee's actual expenses directly related to the construction or repair of the improvement." *Id.* at § 162.031(b). Trustees may "use payments they receive from construction projects to keep those projects going even if, in some instances, the beneficiaries are not paid first." *Coburn Co. of Beaumont v. Nicholas (In re Nicholas)*, 956 F.2d 110, 113 (5th Cir. 1992).

The Fifth Circuit has examined the Texas Construction Fraud statute on two occasions. *In re Boyle* interpreted an earlier version of the law that created a "fiduciary duty only to the extent that a trustee should not divert trust funds with intent to defraud." *In re Nicholas*, 956 F.2d at 113 (citing *In re Boyle*, 819 F.2d at 592). *In re Nicholas* analyzed the current version of the statute and recognized that the Texas legislature had broadened the

7

type and degree of covered conduct, which had the effect of broadening the potential grounds for nondischargeability. *Id.* at 114. Both the predecessor and present statutes impose criminal penalties on trustees who misapply construction trust funds. Payments received on construction contracts for the improvement of real property are designated "trust funds" and the recipient of those funds — in this case, the Cooks — are deemed the "trustee" of those funds. TEX. PROP. CODE ANN. §§ 162.001–002. The beneficiaries are the subcontractors that, like CED, provide the labor and materials for the construction projects. *Id.* § 162.003. The 1987 amendment to the statute broadened the scienter element of a trustee's "misapplication" of trust funds. Under the amended statute, a trustee who "intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds has misapplied the trust funds." *Id.* § 162.031(a). The amendment also created affirmative defenses to a trustee's liability for misapplication, including that the proceeds are used "to pay the trustee's actual expenses directly related to the construction." *Id*. § 162.031(b). Although labeled as an affirmative defense in the Texas statute, the beneficiary has the burden of proving that the challenged debt falls within a Section 523(a)(4) exception, and "must adduce some evidence that funds were misapplied" to prevail in an adversary proceeding. *In re Nicholas*, 956 F.2d at 114.

CED alleged and provided summary judgment evidence that under the Texas Construction Fraud Statute, the Cooks, as owners of Madi, an electrical subcontracting company, acted as trustee of funds received on the construction contracts for the benefit of

the subcontractors providing materials for the contracts. CED alleged and provided summary judgment evidence that as a materials supplier, it was a beneficiary of that trust. Trustees may only disperse funds to pay the beneficiaries or to "pay actual expenses directly related to the construction or repair of the improvement." TEX. PROP. CODE ANN. § 162.031(b). CED alleged that the Cooks received payment from the general contractor and distributed trust funds for personal expenses rather than paying beneficiaries (including, but not limited to, CED) or other statutorily-approved expenses.

CED introduced summary judgment evidence that during the relevant period, the Cooks wrote a number of checks on Madi's account — which the Cooks controlled — to pay personal expenses unrelated to the construction contracts.[2] The allegations and evidence precluded summary judgment that as a matter of law, the Cooks did not violate Chapter 162 of the Texas Property Code and had no liability to CED that survived bankruptcy. In moving for summary judgment, the Cooks simply relied on the fact that Madi was a limited liability company and argued that CED had to "pierce the corporate veil" to raise a fact issue as to liability and dischargeability. TEX. PROP. CODE ANN. § 162.031(b). In responding to the Cooks' motion for summary judgment, CED introduced copies of these checks and Madi's financial statements for the relevant period. (Docket Entry No. 1, Tab 23, Ex. C). In a hearing before the bankruptcy court, the Cooks testified that Madi had no assets worth more

---

[2] CED supplemented the documentation of these expenses in its motion for reconsideration, but introduced a summary of the bank records in its response to the Cooks' motion for summary judgment.

than $1,000, (Docket Entry No. 1, Tab 31, Ex. A at 3), yet made a number of payments for expenses unrelated to the construction projects or to any aspects of its business.

The summary judgment record included a number of questionable payments by the Cooks from Madi's account. Madi's payment of retail bills to clothing stores (Lane Bryant (*id.*, check no. 2878) and Dillard's (*id.*, check no. 2884)); student loan payments (*id.*, check nos. 2782, 2792, 2813); life insurance premiums (*id.*, check nos. 2937, 2963, 3004); medical expenses (*id.*, check nos. 2971, 2983, 2998, 2999); and payments to the Waller Country Club (*id.*, check nos. 2904, 2929) raise fact issues material to determining whether the Cooks were trustees as to trust funds held for CED's benefit and whether they spent trust funds for purposes that violated their fiduciary duties.[3] There is no evidence as to how the Cooks' use of Madi funds to pay expenses such as mortgage bills, medical bills, country club dues, and life insurance premiums paid "actual expenses directly related to" Madi's construction projects. Madi's status as a limited liability company did not, as a matter of law, entitle the Cooks to summary judgment. The Cooks' argument that CED had to "pierce the corporate" veil misses the mark: the Texas Construction Trust Fund statute permits a finding of nondischarageability on certain findings and no veil piercing is required to find that the Cooks were trustees as to trust funds or that they breached duties that they owed as trustees. CED's complaint, pleadings, and response to the summary judgment motion directly tracked the Texas statute and the Fifth Circuit law applying that statute in the bankruptcy context,

---

[3] Even assuming that the bankruptcy court correctly rejected this evidence based on the Cooks' conclusory argument that the affiant lacked personal knowledge, CED's evidence of the Madi checks signed by the Cooks was sufficient to defeat the summary judgment motion.

first articulated in *Boyle* in 1987 and clarified in *Nicholas* in 1998. At a minimum, the record creates fact issues as to whether the Cooks, as the sole owners of Madi, had a fiduciary duty to CED under Texas law, the violation of which, although subject to several fact-based affirmative defenses, would defeat their attempt to discharge the trust fund debt. The Cooks' argument that the limited liability status of Madi precluded the adversary claim was without merit.

## III.   Conclusion

CED made allegations and introduced evidence sufficient to defeat the Cooks' motion for summary judgment, requiring that this case be reversed and remanded.[4]

SIGNED on February 27, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

---

[4] This court concludes that the Cooks moved for, and the bankruptcy court granted, summary judgment without taking the Texas statute into account. Because the record shows that the Cooks delayed producing Madi's bank records in a way that frustrated discovery into the issues that are central to the adversary claim, additional discovery into these issues appears warranted.